The opinion of the court was delivered by
Manning, C. J.
Charles Maduel, as executor of J. M. Caballero, -and Maria Conte, assisted by her husband, as sole heir of Caballero, *484 sue the defendants for the recovery of a lot and building thereon in this-city, and for the rents thereof from Caballero’s death, May 1,1866, at two hundred dollars a month. They allege that Caballero was the owner of the property, though the title was nominally in Tuyes, who made a simulated transfer of it to Fernandez y Lineras for the stated price of $17,000.00, one third cash, and the residue on a credit of one- and two years — that Tuyes had secret instructions from Caballero to transfer the property after his (Caballero’s) death to Charles J. Leveque for certain purposes, and that Tuyes, Fernandez, and Leveque fraudulently confederated to deprive Caballero’s succession of it. The plan is-alleged to be this; — Tuyes sold to Fernandez, a friend of Leveque, as above stated, but the latter was the beneficiary of the sale, and received the price, and sold the notes, which represented two thirds of it, the-object being as is alleged to incumber the property with a mortgage aiid vendor’s lien. Judgment was sought against these three parties* but in the event it should appear that the mortgage notes are a real and ■valid incumbrance on the property, it is prayed in the alternative the property can not be returned to the succession unincumbered, that they be condemned to pay seventeen thousand dollars with interest, and the rents. Judgment was rendered below, on the verdict of a jury, against Tuyes and Leveque for the full amount claimed. A plea of Fernandez: to the jurisdiction was sustained. Tuyes and Leveque appeal, and in this court a discontinuance has been entered as to Tuyes.
The answers are the general issue, and a special denial of MariaConte’s quality of heir. Her status as heir was fixed ny the decree of this court in Suc. Caballeros v. His Executor, 24 Annual, 573.
It is not pretended that the legitime of the heir is diminished or affected by the disposition of this property, made by the ancestor. It was bought really by Caballero, whose secret instructions to Mr. Tuyes* dated April 5, 1865, were to pay to Madame Toussaint, mother of his late wife, seventy dollars monthly out of the rents, after deducting all expenses for taxes, repairs, etc., and if funds were in hand, to pay the annual expenses of keeping the tomb in which were deposited the remains of his wife and children, including four dollars a month to the keeper of the cemetery, and upon Caballero’s death, to sell the property, and deliver the proceeds to Charles Leveque, to whom Caballero had given instructions wliat to do with it. Levequo discloses, in his-testimony, that these instructions were to keep the tomb in order, to-ornament it, to “ defend Caballero’s honour from vile persons, and to-make charity.”
There would seem to be no good reason why a gift, coupled with such conditions, should not be valid when the legitime of the heir is not-affected by it. The object of the donor was honourable. There was, *485 ¡nothing illegal, immoral, or contrary to public policy in the purpose oí dabal'ero, and unless the manner in which he attempted to effectuate it was illegal, the donation must stand. It will be perceived we are treating the transaction as if tlis evidence of it were a deed from Caballero to Tuyes, or to Leveque, by which he consecrated a certain property, or the fund arising first from its rents, and afterwards from its sale, to specified objects, in themselves licit and not reprobated. Such donation is not in fraud of an lieir, who has got all that the law says she must have.
The destination of this property by Caballero, even if it had assumed the form of a donation, was liable to revocation during his life. He had expressly postponed its operation until after his death. “I being dead, of the product of said property ” you will thus dispose, was his language. During Caballero’s life, Leveque himself rented the property from Tuyes, and paid the latter the rents. Caballero did not assume to exercise any control over it. He ha 1 conti led the trust to his friend Tuyes, and that trust was honourably and faithfully executed. The sale was made after his death, and there can be no question that a bona fide purchaser from Tuyes, either before or after Caballero’s death, would have acquired a good title against all the world. Before the sale was made, the plaintiff gave notice to Tuyes that she claimed the property by right of heirship to Caballero — the same right that she is now seeking to enforce.
The paper-writing, called ‘instructions’ of Cabellero to Tuyes, may be either a donation inter vivos or mortis causa, if it have the form of either of those instruments, and is not in other respects obnoxious to the requirements of the Code. Property cannot be acquired nor disposed of gratuitously, unless by donation in one of these forms. Civil Code, ■art. 1453 new no. 1467, although a manual gift of corporeal movables, accompanied by a real delivery, is not subject to any formality. Ibid. art. 1526 new no. 1539. Every donation of immovable property inter vivos, and of such incorporeal things as rents and credits must be made by notarial Act under penalty of imllity. Ibid. art. 1523 new no. 1536. It is manifest that -if these ‘instructions’ are-to be considered, as a donation inter vivos of the property, the want of the form imperatively prescribed strikes them with nullity. The instructions are a private and -secret letter, addressed by Caballero to Tuyes. And whatever .intentions Caballeio may have had as to the permanence of the destination of the property, there can be no question the destination was (revocable by himself at any time during his life. He had expressly directed that the property should not be alienated until after his death, and although he could not have revoked to the detriment of a bona fide purchaser from. Tuyes, who had acquired while the title was, by Cabal *486 lero’s own act, in Tuyes, he could have forced the latter to convey or reeonvey to himself. The form of a donation inter vivos is wanting, and we cannot hold the instrument valid as such.
It occurred to us, while in consultation, that it might be a donation mortis causa, and as that question had not been raised in either the oral or printed arguments, we invited briefs from both counsel on that point. The counsel for the defendants at once, not only admitted but insisted that it was not a donation mortis causa, and thus the last prop was taken avray from his clients’ defence. We examined the question however, much aided and facilitated by the brief of counsel of plaintiff.
The ‘instructions’ have apparently the foim of one kind of donations mortis causa i. e. olographic wills. Of course we are not to say here that the document was wholly written, dated, and signed by the testator, since proof of that would only be furnished, if the paper had ever been offered for probate as a will, and it never has been so offered.
It would not have mattered what the document was called. The name given to an act of last will is of no importance, and testamentary dispositions may be made under any name, provided the intention to testate is apparent. Neither would it have been of any consequence that the instrument contained a dispesifion of only a part of the testator’s property. Civil Code, art. 1563 new no. 1570. It has one of the essential qualities of a testament. It was to take effect only after his death.
But if it has the form of an olographic will, the manner in which Caballero has sought to accomplish his design,is reprobated by the law.
The French authorities throw more light than our own on this question. A case at Besangon, involving the kind of disposition now before us was decided adversely to its legality ;—
La disposition d’un testament par laquelle, a pres avoir legué une partie de ses biens á un individu le testateur aponte, “Je lui remeta tout le reste de mes biens pour en disposer com me il sait, et que je lui ai dit de vive voix, ou que je lui noterai par écrit, nt’en rappoitant á sa conscience pour cela,” estnulle, comme faite a une persotme incertaine et ne conteDant pas la manifestation sufíisante de la volenté du testateur. Strey’s Code Nap. 1 vol. art. 895 no. 12.
And another at Limoges ;—
Le legs fait au profit d’un individu pour exécuter les intentions secretes du testateur, doit étre annulé coinme me désignant le veritable lógataire. En consequence le légataire apparent est tenu de restituer tout ce qu’il a regu, dans ce but, du testateur. Rep. Gen. tome 9. verbo Legs p. 48 no. 35.
And another at Metz;—
La disposition par laquelle le testateur legue le tiers ele ses biens a *487 Fóglise on aa seminaire, a la volentó du lógataire designó dans le testament n’est pas valable. Ibicl. no. 36.
The object Caballero had in view was legitimate, and the heir could not have successfully resisted the accomplishment of his purpose, had lie sought to effect it in the mode permitted by the Code. He attempted to do in a clandestine way what he need not have been ashamed to do before the eyes of the world, and to accomplish by secret instructions what he might have done by an open and explicit declaration in a notarial Act, or by last will, and the nullity of his ‘instructions’is the penalty of his mistake.
Judgment affirmed.
Rehearing refused.